UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                    :
                                                    :
AMERICAN FINANCIAL INTERNATIONAL                    :
GROUP–ASIA, L.L.C., NORMA LaVIGNE, and              :
VAUGHN LaVIGNE, individually and on                 :
behalf of all others similarly situated,            :
                                                    :
                                                    :
                          Plaintiffs,               :
                                                    :          05 Civ. 8988 (GEL)
        -against-                                   :
                                                    :          **OPINION AND  ORDER**
                                                    :
PHILLIP R. BENNETT, REFCO GROUP                     :
HOLDINGS, INC., THE PHILLIP R. BENNETT              :
THREE YEAR ANNUITY TRUST, GERALD                    :
M. SHERER, WILLIAM M. SEXTON, SANTO                 :
C. MAGGIO, FRANK MUTTERER, PHILIP                   :
SILVERMAN, and DOES 1 THROUGH 50,                   :
                                                    :
                          Defendants.               :
                                                    :
-------------------------------------------------------------x

Stephen J. Fearon, Jr., Squitieri & Fearon, LLP,
New York, New York, Daniel Keller, Keller
Fishback, LLP, New York, New York, and Karen
Riebel, Lockridge, Grindal, Nauen, PLLP,
Minneapolis, Minnesota, for Plaintiffs.

Jeffrey T. Golenbock and Adam C. Silverstein,
Golenbock Eiseman Assor Bell & Peskoe LLP,
New York, New York, for Defendants Phillip R.
Bennett, Refco Group Holdings Inc., and Phillip R.
Bennett Three Year Annuity Trust.

Yoram J. Miller and Matthew J. Sava, Shapiro
Forman Allen Sava & McPherson LLP, New York,
New York, for Defendant Gerald M. Sherer.

Stuart I. Friedman, Ivan Kline, and Elizabeth D.
Meacham, Friedman & Wittenstein, New York,
New York, for Defendant William M. Sexton.

Holly K. Kulka, Heller Ehrman LLP, New York,
New York, for Defendant Philip Silverman.

GERARD E. LYNCH, <u>District Judge</u>:

This is one of several cases arising out of the collapse of Refco.  See, e.g., In re Refco, Inc., Secs. Litig., No. 05 Civ. 8626, 2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007) (addressing motions to dismiss in a related case).  Plaintiffs in this case are a putative class of customers of RefcoFX, a subsidiary of Refco that provides currency-trading services.  Plaintiffs held RefcoFX currency-trading accounts (Compl. ¶¶ 28-30, 33[1]), and now bring various claims against corporate officers of Refco alleging, inter alia, that actions by those officers resulted in a loss of value in the funds held in those accounts.  Four motions to dismiss by officers of Refco and entities controlled by those officers are now pending.  The motions will be granted.

## BACKGROUND

Plaintiffs allege that Refco, prior to its collapse, engaged in a massive fraudulent scheme designed to conceal uncollectible debts owed to the company.  (Compl. ¶¶ 49-52.)  In effect, Refco orchestrated a series of transactions where the debt would be transferred to a Refco subsidiary, and then temporarily paid off at the end of Refco's reporting periods via transactions in which another Refco subsidiary loaned money to a third party, which then loaned money to the first subsidiary to pay off the debt.  These transactions were only temporary, and were designed to hide the bad debt from the public and Refco's investors.  (Id.)  The fraud was disclosed on October 10, 2005, when the Company revealed to the public "that Refco's financial

---

[1] Unless otherwise noted, all references to the Complaint in this opinion are to the second amended complaint (Doc. #31), filed June 30, 2006.  The second amended complaint is simply captioned "Amended Class Action Complaint."  This makes it easy to confuse with the first amended complaint (Doc. # 15), filed April 13, 2006, because both documents have the same caption.

results had been materially misstated and that Refco was owed $430 million in uncollectible debt." (Id. ¶ 60.)

Plaintiffs are a putative class of customers of RefcoFX, a Refco subsidiary that provided accounts through which customers could make currency trades. (Compl. ¶¶ 28-30, 55.) Plaintiffs allege that at some point after the October 10 announcement, "Defendants assured Plaintiffs and other members of the Class that RefcoFX's trading operations and customers['] trading accounts would be unaffected." (Id. ¶ 63.) However, on October 17, 2005, plaintiffs were notified by RefcoFX that their accounts were frozen, meaning that no funds could be withdrawn or deposited. (Id. ¶¶ 19-20, 64.)

Refco and Refco FX are not named as defendants in this action because they have filed for bankruptcy, and the automatic stay provisions of the bankruptcy law preclude suits against them. (Compl. ¶¶ 31, 33.) Accordingly, the named defendants are corporate officers of Refco and its subsidiaries.

Defendant Phillip R. Bennett was the President, Chief Executive Officer ("CEO"), and Chairman of Refco, RGHI and RefcoFX until he was forced to resign in October 2005. (Compl. ¶ 38.) Defendants Refco Group Holdings, Inc. ("RGHI") and the Phillip R. Bennett Three Year Annuity Trust (the "Bennett Trust") are shell entities owned and controlled by Bennett. (Compl. ¶¶ 34, 36, 38.)

Defendant Gerald M. Sherer was the President and CEO of RefcoFX, and Executive Vice President and Chief Financial Officer of RGHI. (Compl. ¶ 40.) Defendant William M. Sexton was Executive Vice President and Chief Operating Officer ("COO") of RefcoFX and RGHI. (Compl. ¶ 41.) After Bennett was forced to resign, Sexton briefly served as CEO of Refco and

RefcoFX, but resigned on November 15, 2005. (Id. ¶ 42.)  Defendant Philip Silverman was

Secretary of Refco and RGHI.  (Id. ¶ 46.)  Of the other defendants remaining in the case, Santo

C. Maggio has answered, and defendants Frank Mutterer and "Does 1 Through 50" have not

been served.

## DISCUSSION

### I.     Standards for Motions to Dismiss

For purposes of a motion to dismiss, courts "accept the complaint's factual allegations,

and all reasonable inferences that can be drawn from those allegations in the plaintiffs favor, as

true." Roth v. Jennings, ___ F.3d ___, No. 06-0784, 2007 WL 1629889, at *1 (2nd Cir. Jun. 8,

2007).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," in order to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v.

Gibson, 355 U.S. 41, 47 (1957).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v.

Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964-1965 (2007) (internal citations omitted).  "Factual

allegations must be enough to raise a right to relief above the speculative level," and must make

"a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 1965 & n.3.

**II.**     **Breach of Contract and Breach of Warranty (Counts III and IV)**

Defendants move to dismiss plaintiffs' claims of breach of contract and breach of warranty on the grounds that plaintiffs have failed to allege that they were parties to any relevant contract.   Plaintiffs allege that "[e]ach Defendant entered into a contract with each Class member governing the trading accounts."  (Compl. ¶ 100.)  This, however, is the extent of their effort to identify the contracts in question.  Plaintiffs correctly note that notice-pleading standards apply to claims for breach of contract, see Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176-177 (2d Cir. 2004), but the complaint fails to give the defendants notice as to what contract they supposedly breached.  The only mention of any contract in the complaint is a reference to "uniform client agreements" (Compl. ¶ 99), but these appear to be contracts between RefcoFX and plaintiffs.  "As officers of the corporation with which the plaintiff contracted, . . . the respondents may not be held personally liable on the contract, since they did not bind themselves individually under that contract."  Gordon v. Teramo & Co., 764 N.Y.S.2d 144, 144 (App. Div. 2d Dep't 2003).

Plaintiffs' breach of warranty claims against the corporate officers and the Bennett-controlled entities fail for the same reason: there was no privity of contract between plaintiffs and defendants.  In non-personal injury actions, "privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller."   Inter Impex S.A.E. v. Comtrade Corp., No. 00 Civ. 0133, 2004 WL 2793213, at *5 (S.D.N.Y. Dec. 6, 2004) (internal citations and quotation marks omitted).

Plaintiffs argue that "defendants are personally liable on the breach of contract and warranty claims because they used the corporate entities to commit numerous torts against the

plaintiffs." (P. Mem. 22.[2])  Of course, a corporate officer's participation in a tort renders him subject to personal liability.  See Am. Exp. Travel Related Services Co., Inc. v. North Atlantic Resources, Inc., 691 N.Y.S.2d 403, 404 (App. Div. 1st Dep't 1999).  But liability in such circumstances is for the tort, not for all wrongs suffered by the victims at the hands of the corporation.

Plaintiffs also argue that defendants should be found liable for the corporation's breach of contract on a theory of veil-piercing.  (P. Mem. 23.)  To pierce the corporate veil, plaintiffs must show that defendants "(1) have exercised such control that the subsidiary has become a mere instrumentality of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff."  Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 138 (2d Cir. 1991) (internal citation and quotation marks omitted).  Nothing in the complaint suggests that RefcoFX was a "mere instrumentality" of the defendants or even addresses the extent to which defendants controlled the corporation.  Accordingly, plaintiffs' argument is without merit, and the contract and warranty claims must be dismissed.

## III.   Negligence (Count I)

Count I of the complaint, which alleges negligence, seeks recovery only of economic damages.  However, "New York law holds that a negligence action seeking recovery for economic loss will not lie."  Suffolk County v. Long Island Lighting Co., 728 F.2d 52, 62 (2d

---

[2] Plaintiffs have filed two memoranda in response to the instant motions.  The first, which addresses the motions by defendants Sherer, Sexton, and Bennett et al., is referred to herein as "P. Mem."  The second, which responds only to Silverman's motion, is referred to as "P. Silverman. Mem."

Cir. 1984).  Plaintiffs acknowledge this rule and do not dispute that it is generally applicable

here.  (P. Mem. 18.)  Instead, they rely upon the exception to the rule for negligent performance

of contractual services, see MCI Telecomm. Corp. v. John Mezzalingua Assoc., Inc., 921 F.

Supp. 936, 945 (N.D.N.Y. 1996), and argue that "to the extent that an agreement exists between

the parties, a claim for negligence exists."  (P. Mem. 18.)  As noted above, however, there was

no contract between plaintiffs and defendants, and so the negligence claim cannot lie.[3]

## IV.     Unjust Enrichment (Count II)

Defendants argue that plaintiffs' claims for unjust enrichment fail to allege that

defendants were actually enriched.  "A claim for unjust enrichment requires a plaintiff to allege

that the defendant has already been enriched, and that the enrichment came at plaintiff's

expense."  Mina Inv. Holdings, Ltd. v. Lefkowitz, 51 F. Supp. 2d 486, 489 (S.D.N.Y. 1999)

(internal citations omitted).

Plaintiffs have not alleged that any of the commissions they paid to RefcoFX were passed

on in any direct sense to the defendants.  Instead, they allege that defendants "retained the assets

deposited by Plaintiffs and the Class *with RefcoFX and the various Refco entities* and have

refused to return those assets."  (Compl. ¶ 92 (emphasis added).)  But maintaining those assets at

RefcoFX is not the same as being personally enriched.  Nothing in the complaint indicates that

defendants received any personal benefit from the commissions at issue, or from the assets

allegedly retained by RefcoFX.  Of course, defendants were paid as employees of the

---

[3] Defendants Sherer and Sexton argue that plaintiffs have failed to state a claim for negligent misrepresentation.  (Sherer Mem. 9-14; Sexton Mem. 9-11.)  Plaintiffs explicitly disavow any such claim, however (see P. Mem. 16 n.10), and so there is no need for the Court to address that question.

corporation, but if this were sufficient to allow a claim for unjust enrichment, any customer of a corporation could sue any employee for the company's wrongful actions, which would render the corporate form meaningless.

Like the complaint, plaintiffs' motion papers do not contend that defendants were personally enriched. Instead, plaintiffs promise that "[u]ndoubtedly, discovery will yield substantial evidence demonstrating how each defendant personally benefitted from wrongdoing at RefcoFX." (P. Mem. 9.) Plaintiffs' confidence in the prospects of their proposed fishing expedition does not remedy their failure to allege the elements of their claim.

## V.    Unfair Competition (Count V)

Plaintiffs' allegations of unfair competition are so vague that it is difficult to say what behavior they are based on. The sole substantive allegation of Count V states that the defendants "violated federal rules and regulations as well as other laws by their unfair, unlawful, deceptive, and misleading practices" (Compl. ¶ 112), but it does not say what these "practices" were.

Plaintiffs point out that unfair competition has been described as an "'adaptable and capacious tort,'" which "proscribes all forms of commercial immorality, the confines of which are marked only by the 'conscience, justice and equity of common-law judges.'" LinkCo, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 501 (S.D.N.Y. 2002), quoting Demetriades v. Kaufmann, 698 F. Supp. 521, 525 (S.D.N.Y. 1988). Plaintiffs apparently contend that their allegations of unfair and deceptive practices, although they fail to identify the bad practices alleged to constitute the violation, fall within this broad proscription. "New York law in this area is indeed flexible, but it is not that flexible." Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another." Id. Plaintiffs have alleged nothing of the sort. Under New York law, "the gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets." Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano, 331 F. Supp. 2d 247, 255 (S.D.N.Y. 2004), quoting Eagle Comtronics, Inc. v. Pico Prods., Inc., 682 N.Y.S.2d 505, 506 (App. Div. 4th Dep't 1998). Plaintiffs' allegations fail to identify any misappropriation of labor, expenditure, or commercial advantage. Accordingly, this claim will be dismissed.

## VI.   Breach of Fiduciary Duty (Count VI)

A claim for breach of fiduciary duty involves three elements: "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 342 (2d Cir. 2004). "Under New York law there is no fiduciary duty owed to the investing public, or to the customers of a corporation by a controlling shareholder, officer, or director of a corporation." A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978, 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999). "Fiduciary duties do not arise solely because one party has expertise that is superior to another." Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 486-87 (S.D.N.Y. 2006). Thus, "a broker does not, in the ordinary course of business, owe a fiduciary duty to a purchaser of securities." Fekety v. Gruntal & Co., Inc., 595 N.Y.S.2d 190, 190-191 (App. Div. 1st Dep't 1993).

Plaintiffs' allegations pertaining to fiduciary duty are beyond bare. The complaint never explains the source or scope of the supposed duty owed by defendants. In their motion papers,

plaintiffs rely on O'Connor & Assoc. v. Dean Witter Reynolds, Inc., 529 F. Supp. 1179 (S.D.N.Y. 1981), but that case held that claims under the federal securities laws could go forward even though plaintiffs, who traded in the defendant company's stock options, were *not* owed a fiduciary duty by the corporation.  Id. at 1186.  Thus, it hardly stands for the proposition that a corporation, let alone its officers and employees, owes a fiduciary duty to its customers.

Plaintiffs also rely upon Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, 446 F. Supp. 2d 163, 196-197 (S.D.N.Y. 2006), but in that case the district court held that the administrator of a hedge fund owed a fiduciary duty to shareholders in the fund when the administrator "held itself out to investors as having policies and procedures to ensure that the Funds' valuations would be accurate and fair, and that they relied on these representations."  Id. at 196-97.  The fiduciary duties in Pension Committee pertained to those valuations, and arose from an administration agreement that governed the administrator's obligation with respect to independent valuation.  Id. at 197.  No comparable relationship is alleged to have existed in this case.

"Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship."  Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998).  "Such a duty can arise only where the customer has delegated discretionary trading authority to the broker."  Id.  The complaint never suggests that plaintiffs delegated any discretionary authority to RefcoFX.  Even if such a relationship had existed between plaintiffs and RefcoFX, nothing in the complaint suggests that any relationship existed between plaintiffs and RefcoFX's individual officers.  Accordingly, plaintiffs' claims for breach of fiduciary duty must be dismissed.

**VII.    Gross Mismanagement (Count VII)**

Plaintiffs allege that defendants are liable for "gross mismanagement" of RefcoFX. (Compl. ¶¶ 119-25.)  Allegations of gross mismanagement "plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually."  Abrams v. Donati, 66 N.Y.2d 951, 953 (N.Y. 1985).  Plaintiffs in this case do not allege that they were shareholders of RefcoFX or of Refco.

Plaintiffs argue that they have standing to pursue a claim for gross mismanagement pursuant to New York Business Corporations Law § 720, which provides, inter alia, that judgment creditors may bring an action against the officers or directors of a corporation for neglect or violation of their duties with regard to management of corporate assets.  Even if § 720 had been invoked in the complaint, however, the complaint does not allege the existence of any judgment in favor of plaintiffs.

Plaintiffs contend that they qualify as judgment creditors in spite of the fact that no judgment has been obtained, citing only Sherill Hardwood Lumber Co. v. New York Bottle Box Co., 195 N.Y.S. 22 (N.Y. Sup. Ct. 1922), a case predating the 1961 enactment of § 720, which held that "where by the act of the corporation or for any other cause it is impossible for the creditor to obtain such a judgment the creditor can maintain the action against the directors, even if no judgment has been obtained."  Id. at 23.  That case, however, involved a corporation that had been dissolved, preventing plaintiffs from pursuing any legal remedy against it, which is not the case here.[4]  The Second Circuit has rejected similar attempts to ignore the word "judgment"

---

[4] Plaintiffs appear to face no difficulty *obtaining* a judgment, as opposed to enforcing one.  If they are legitimate creditors, they may file a proof of claim in the bankruptcy court.  See 11 U.S.C. §§ 501-02.

in § 720.  <u>Coleman v. Golkin, Bombback & Co., Inc.</u>, 562 F.2d 166, 168 (2d Cir. 1977) (holding

that judgment was required for standing under § 720, and declining to rely on authorities that

"were decided under [earlier] statutes . . . which used the word 'creditor' rather than the words

'judgment creditor'.")  Thus, this argument too is without merit, and the gross mismanagement

claims must be dismissed.[5]

## VIII.   <u>Fraud (Count VIII)</u>

Plaintiffs' fraud claim is brought under New York common law.[6]  "Under New York law,

the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a

material misrepresentation or omission of fact (2) made by defendant with knowledge of its

falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5)

resulting damage to the plaintiff."  <u>Crigger v. Fahnestock and Co.</u>, 443 F.3d 230, 234 (2d Cir.

2006).

Rule 9(b) of the Federal Rules of Civil Procedure requires that in all allegations of fraud,

the circumstances constituting the fraud must be stated with particularity.  <u>Shields v. Citytrust</u>

---

[5] Plaintiffs argue that Sherer is "precluded from challenging" the claim of gross mismanagement because his motion papers do not discuss it.  (P. Mem. 24 n.12.)  Page 16 of Sherer's brief clearly challenges "Count VI (for breach of fiduciary duty) and Count VII (for gross mismanagement)."  Sherer's brief fails to make any substantive argument against Count VII, but this appears to be because Sherer shares the other defendants' understanding that the gross mismanagement claim necessarily fails if the breach of fiduciary duty claim fails.  (<u>See</u> Silverman Mem. 16.)  Accordingly, plaintiffs' contention that Sherer is precluded from challenging Count VII is without merit.

[6] Although plaintiffs never identify the law under which the fraud claims are brought, nothing in the complaint specifically mentions federal securities law, and almost all of the authorities cited in plaintiffs' motion papers concern New York law.  Moreover, plaintiffs' motion papers discuss New York common law (P. Mem. 30 n.14), and never discuss federal law, so it seems safe to conclude that these are state law claims.

Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994).  Although this requirement is read in conjunction with the admonition of Rule 8 that a pleading shall contain "a short and plain statement of the claim . . . ," see Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990), and there is no requirement that "detailed evidentiary matter" be pleaded, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985), the pleading must be sufficiently particular to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against him or her; (2) to protect a defendant from harm to reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of "strike suits."  DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987).  Thus, a plaintiff pleading fraud must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001), quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

It is not easy to tell what statements plaintiffs contend were fraudulent.  Count VIII of the complaint alleges that "[a]t all relevant times, Defendants misrepresented, omitted, and failed to disclose material facts to Plaintiffs . . . , including that Refco's financial results were materially misstated and omitted material information" (Compl. ¶ 127) but does not explain when or where these misrepresentations were made.  Alleging that misrepresentations were made "at all relevant times" does not give defendants fair notice as to which statements were misleading.  Looking carefully at the fact section of the complaint, however, it appears that there are three categories of statements that plaintiffs allege to have been misleading: (1) statements in Refco's securities filings, (2) statements on RefcoFX's website, and (3) unidentified statements made after the

October 10, 2005, disclosure of Refco's fraud, but before the freezing of plaintiffs' accounts on October 17.  None of these statements, as described in the complaint, is a sufficient basis to sustain plaintiffs' allegations of fraud.[7]

### A.    Statements in the Securities Filings

The first category of false statements mentioned in the complaint are Refco's securities filings, in particular the registration statement for Refco's August 5, 2005 initial public offering ("IPO"), and the prospectus incorporated by reference into that registration statement.  (Compl. ¶¶ 53-54.)  Although the complaint never actually says that this document was misleading, it is reasonable to infer that the material omissions allegedly made by unspecified "Defendants" (¶ 58) were made in the registration statement, because it seems perfectly clear that the registration statement did not announce that Refco was engaged in a massive fraud.

### 1.    *Attribution and Scienter*

There is no question that plaintiffs have sufficiently alleged that the IPO registration statement and prospectus can be attributed to defendants Bennett and Silverman.  Bennett allegedly signed the statement, so there is no difficulty in attributing it to him.  (Id. ¶ 39.)  Nor can there be any question of its falsehood or materiality: it allegedly omitted the fact that Refco

---

[7] Because this Opinion concludes that no claims may be sustained against any defendants based on any of the three categories of statements relied upon by plaintiffs, it is not necessary to discuss the separate issues that arise with respect to the putative liability of defendants RGHI and the Bennett Trust.  The only apparent basis for their asserted liability is derivative of the liability of the officer defendants — primarily, and perhaps exclusively, Bennett.  (See Compl. ¶¶ 36-37 (alleging that the entities were controlled by Bennett; id. ¶ 46 (noting that Silverman was an officer of RGHI); see also P. Mem. 29-30 (contending that "the allegation that [RGHI and the Bennett Trust] acted through the individual defendants who acted fraudulently is sufficient at this early stage").)  Thus, the fraud claims against RGHI and the Bennett Trust necessarily fail for the same reasons as the claims against the officers.

was engaged in a massive fraud, which certainly would have deterred any reasonable person from doing business with the company and its subsidiaries.  The complaint similarly alleges that Silverman prepared and approved the IPO registration statement, as well as the "Offering Memorandum for the Bonds" and a fiscal year 2005 form 10-K and form 10-K/A.  (Compl. ¶ 46.)  It further alleges that Silverman prepared, approved and signed an October 12, 2004, bond registration statement and subsequent amendments.  (Compl. ¶ 46.)  Again, there can be no question of these statements' misleading nature and their materiality.

The complaint is not as clear as to whether the securities filings can be attributed to Sherer and Sexton.  Indeed, it says nothing about their participation in the creation of these statements.  "[T]he complaint may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." Red Ball Interior Demolition Corp. v. Palmadessa, 874 F. Supp. 576, 584 (S.D.N.Y. 1995).

The complaint also fails to make clear the basis for a finding of scienter, at least as to Silverman, Sexton and Sherer.  To allege common-law fraud, as with federal securities fraud, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir. 1996).  "It can do so by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.  As to Bennett, this is not difficult; as the alleged mastermind of the underlying fraud, he must have known the statements were false.

As to Silverman, Sherer and Sexton, although plaintiffs' memorandum of law states that "Plaintiffs allege that Silverman and the other individual defendants each had access to the financial reports of the Company and was aware of the massive fraud being orchestrated" (P. Silverman. Mem. 23), the cited paragraphs of the complaint say nothing of the sort. (Compl. ¶¶ 134-39.) Instead they allege, with no explanatory detail, that "Defendants had sole access to material facts concerning these problems and risks." (Id. ¶ 136.) This is a conclusion, not a factual allegation, and "scienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." In re Winstar Commc'ns, No. 01 Civ. 3014, 2006 WL 473885, at *7 (S.D.N.Y. Feb. 27, 2006).[8]

Nor does the complaint establish scienter by showing motive and opportunity as to Silverman, Sexton or Sherer. To establish an adequate motive to commit securities fraud, plaintiffs must allege a motive that is concrete and personal to the defendant charged with making the misstatement or omission. Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001). As their memorandum of law makes clear, however, the only basis for plaintiffs' claim of motive is their allegation that Silverman, Sexton and Sherer "engaged in the fraud in order to obtain 'much needed capital' and siphon off funds not only for the benefit of Refco and its various entities, but also for themselves." (P. Silverman Mem. 25.) Plaintiffs allege that "defendants . . . had a motive to commit fraud because they were able to realize hundreds of millions of dollars in

---

[8] The complaint also alleges that Silverman was "a close confidant of Bennett, and, on information and belief, was Bennet[t]'s personal accountant." (Compl. ¶ 46.) It does not allege that Silverman's personal association with Bennett resulted in Bennett's confessing the ongoing fraud to him, and it can hardly be assumed that everyone associating with an alleged fraudster is aware of the ongoing wrong.

commissions and fees from RefcoFX's trading services from plaintiffs." (Id.)  However, the desire to keep stock prices or corporate profits high or to increase one's own compensation is not a sufficient basis for an inference of scienter.  "If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995).

Although the complaint is deficient in these respects, the Court has upheld allegations of fraud against the same defendants, pertaining to the same statements, in the related case of In re Refco, Inc., Secs. Litig., No. 05 Civ. 8626, 2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007), in which the plaintiffs adequately identified misstatements attributable to Sherer, Sexton and Silverman.  The Court rejected contentions by Sherer and Silverman that they were not adequately identified with specific misstatements, and Sexton did not challenge the complaint on this ground.  Id. at *22-*23.  The Court further held that plaintiffs had adequately alleged scienter as to all three defendants.  Id. at *33.  Thus, it appears that the plaintiffs in this case could easily remedy the defects in their current complaint as to attribution and scienter simply by copying the allegations from the related case.  Even assuming arguendo that they did so, however, and that a request for leave to amend the complaint would be granted, there is a remaining issue, not common to the two cases, as to which the complaint is fatally defective. Although the same defendants are named in both Refco cases, the plaintiffs are different, and the plaintiffs in this case have failed to connect themselves to the alleged false statements in the way the law requires.

### 2.    Reliance

"Under New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." Secs. Inv. Protection Corp. v. BDO Seidman, LLP, 222 F.3d 63, 71 (2d Cir. 2000).  Plaintiffs note that a plaintiff alleging fraud, "under ordinary circumstances, need only plead that he relied on misrepresentations made by the defendant to survive a motion to dismiss since the reasonableness of his reliance implicates factual issues whose resolution would be inappropriate at this early stage." Internet Law Library, 223 F. Supp. 2d at 485.  In this case, however, plaintiffs have not alleged that they read any of the financial statements at issue, much less that they actually relied on them.  Cf. BDO Seidman, 222 F.3d at 71 (affirming dismissal of customers' claims where "plaintiffs concede that [the] customers never received or reviewed any of the financial statements").  The question is thus not whether any reliance would have been reasonable, but whether there was "actual reliance" at all.  Golden Budha Corp. v. Canadian Land Co. of Am., N.V., 931 F.2d 196, 202 (2d Cir. 1991).  A plaintiff "cannot claim reliance on alleged misrepresentations of which it was unaware even by implication." Secs. Inv. Prot. Corp. v. BDO Seidman, L.L.P., 95 N.Y.2d 702, 710 (2001) ("BDO Seidman II").

The complaint conspicuously fails to allege that plaintiffs read the allegedly misleading registration statements, or even that they knew of their existence, instead making only two cursory allegations pertaining to reliance.  In Count VIII, the complaint alleges that "Plaintiffs and the other Class members justifiably and reasonably relied upon the express and implied

18

representations of material facts made by Defendants." (Compl. ¶ 129.) Elsewhere, the fact section of the complaint alleges that "Plaintiffs and other currency traders relied on the materially misleading statements provided by Defendants and opened positions with the Company." (Compl. ¶ 56.) Both of these allegations fail to identify any particular misstatement on which the plaintiffs purportedly relied.

It is possible that these general allegations are meant to imply that plaintiffs relied on all of the misstatements mentioned in the complaint — the securities filings, the website statements, and the unspecified post-October-10 statements discussed below — but it is also possible that they are not. It would be consistent with the allegations quoted above, for example, if plaintiffs relied *only* on the post-October-10 statements. In this case, of course, no fraud claim based on the securities filings could lie. Conversely, it is also possible (although unlikely as a matter of common sense) that plaintiffs mean to allege that they relied on the securities filings, but not the website or the post-October-10 assurances. Only the statements actually relied on can give rise to a claim, but the complaint makes it impossible to tell which statements were actually relied on. Thus, the complaint cannot be said to allege with sufficient clarity that plaintiffs actually relied on the statements in the securities filings, and this objection necessarily applies to the other allegedly false statements as well. Because the reliance allegations cannot be tracked to any particular statement, they are insufficient to give the defendants fair notice of the claims against them.

Absent an allegation of actual knowledge of the misleading statements, the Second Circuit has rejected the contention that plaintiffs "are entitled to a presumption of reliance because the customers depended on the regulatory process as a whole to ensure that [the

company's] financial condition was stable." BDO Seidman, 222 F.3d at 72.  The Circuit

declined to "presume that [the] customers relied on [the] misrepresentations.  Rather, the

plaintiffs must show that the customers 'actually relied' on [the allegedly misleading] certified

statements to the SEC and the NASD regarding [the company's] financial health."  Id., quoting

Rosen v. Spanierman, 894 F.2d 28, 34 (1990).  This case is indistinguishable from BDO

Seidman.  Because the complaint is "devoid of any allegation that [the] customers ever received

this information in any form, they cannot establish reliance under New York law."  Id. at 73.[9]

Thus, the fraud claims based on alleged misstatements in the securities filings must be dismissed.

**B.      Statements on RefcoFX's Website**

        The complaint also discusses certain alleged statements on RefcoFX's website, alleging

that "[o]n [RefcoFX's] web site, www.refcofx.com, Defendants represented that 'institutions

trust Refco with billions, who do you trust?'" (Compl. ¶ 55.)  The website also allegedly stated

that Refco had "40 years in the business," had "over 200,000 customers worldwide," and had

"over 20 billion [dollars] in assets," and that traders investing through RefcFX would have

"complete safety of funds."  (Id.)  Plaintiffs' claims of fraud based on these misstatements suffer

from at least two fatal defects.

---

        [9] Nor can plaintiffs rely on the "fraud on the market" theory, under which "a plaintiff
claiming securities fraud under § 10b of the Securities Exchange Act of 1934, 48 Stat. 881, as
amended, 15 U.S.C. § 78a et seq., and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R.
§ 240.17b-5, is entitled to a rebuttable presumption of reliance based on the notion that 'in an
open and developed securities market, the price of a company's stock is determined by the
available material information.'"  BDO Seidman, 222 F.3d at 72 n.5, quoting Basic Inc. v.
Levinson, 485 U.S. 224, 241 (1988) (alterations in original).  Effectively, this theory holds that
material false statements defraud stock *purchasers* even when the purchasers have not read them.
Id.  "The fraud on the market concept, however, is inapposite here, because the conduct at issue
does not involve the pricing or purchase of securities and the plaintiffs thus cannot show that the
customers relied on the integrity of the market itself in deciding to invest."  Id.

First, the complaint does not specify when the statements at issue were posted to the website, or how long they appeared there for.  It is impossible to tell from the complaint whether the statements appeared during the period in which plaintiffs made their decision to use RefcoFX's services.  Although the complaint need not identify the exact hour, duration, and place of the conversation at issue, some specificity is required.  Cf. Internet Law Library, Inc. v. Southridge Cap. Mgmt., LLC, 223 F. Supp. 2d 474, 481-482 (S.D.N.Y. 2002) (finding sufficient specificity in an allegation that fraudulent conversations were conducted "all through March and April of 2000," where the complaint explained that they were "conducted by phone, fax and email, with [one party] in Texas and [the other parties] in Connecticut.").

Second, the complaint offers no basis for the inference that the website statements were made by any of the moving defendants.  Under Rule 9(b), "[t]he pleading must give notice to each defendant of its alleged misconduct," In re Blech Secs. Litig., 928 F. Supp. 1279, 1292 (S.D.N.Y. 1996), and so  "[a] plaintiff cannot satisfy Rule 9(b) by filing a complaint in which defendants are clumped together in vague allegations."  Double Alpha, Inc. v. Mako Partners, L.P., No. 99 Civ 11541, 2000 WL 1036034, at *3 (S.D.N.Y. Jul. 27, 2000) (internal citations and quotation marks omitted).  Although it is possible that some of the defendants were involved in the production of these statements, it is far from obvious that senior corporate officers would be involved in drafting text for a corporate website.  Plaintiffs do not contend that this was the case.  Nor do plaintiffs argue that the statements can be otherwise attributed to the defendants through the doctrine of "group pleading" or any other theory of attribution.

In short, plaintiffs have failed to identify the statements on RefcoFX's website with sufficient precision and to connect them to particular defendants.  Thus, their claims of fraud based on these statements cannot be sustained.

### C.   "Assurances" Between October 10, 2005, and October 17, 2005, and Other Unidentified Statements

The third category of statements on which plaintiffs apparently rely is even more vaguely defined than the others.  The complaint alleges that "Defendants assured Plaintiffs and other members of the Class that RefcoFX's trading operations and customers['] trading accounts would be unaffected."  (Compl. ¶ 63.)  In context, it is clear that these statements are alleged to have been made after the disclosure of Refco's fraud on October 10, 2005, but before the freezing of plaintiffs' accounts on October 17, 2005.  Bennett and Silverman, however, allegedly left Refco at the same time the fraud was disclosed (Compl. ¶¶ 38, 46), and so these statements are apparently not attributable to them.  As to the other defendants, the allegations is defective because it fails to specify whether the misleading statements were in oral conversations or documents of some kind, giving no suggestion of where and by whom they were made.  "[A]llegations which fail to specify the time, place, speaker and, in some cases, the contents of the misrepresentations, lack the 'particulars' required by Rule 9(b)."  Fromer v. Yogel, 50 F. Supp. 2d 227, 246 (S.D.N.Y. 1999).

Similarly vague allegations that "Defendants assured customers and the market that Refco had managed risk prudently in the past and would continue to do so in the future" (Compl. ¶ 58) and that "Defendants concealed and misrepresented the true charges that would be imposed on customers for using RefcoFX's trading services" (Compl. ¶ 79(c)) fail for the same reason: it is impossible to tell when the statement or statements referenced were made, by whom, or to

whom.  Accordingly, this category of misleading statements, like the other categories, is not a sufficient basis for plaintiffs' fraud claims, and those claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the motions to dismiss by defendants Sexton (Doc. # 37), Sherer (Doc. # 41), Bennett et al. (Doc. # 45), and Silverman (Doc. # 56), are granted.  The complaint is dismissed as to those defendants.

Plaintiffs' request for leave to amend their complaint (P. Mem. 36 n.17) is granted to the extent that plaintiffs may replead their fraud claims if they are able to cure the defects that have required dismissal of those claims; the request is denied with respect to all other claims. Defendant Sexton's application for dismissal with prejudice (Sexton Mem. 25) is denied to the extent that plaintiffs' leave to amend is granted.


SO ORDERED.

Dated:  New York, New York
      June 13, 2007

                                 GERARD E. LYNCH
                            United States District Judge

23